Filed 7/2/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| KELE YOUNG,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA FISH AND GAME<br>COMMISSION et al.,<br><br>      Defendants and Respondents. | E067151<br><br>(Super.Ct.No. CIVDS1508950)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  David Cohn, Judge.

Affirmed.

Kele Young, in pro. per., for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Robert W. Byrne, Randy L. Barrow, and Nhu

Q. Nguyen, Deputy Attorneys General, for Defendants and Respondents.

Plaintiff and appellant Kele Young, owner and operator of the Magic Jungle

Wildlife Preserve, a wildlife sanctuary located in Lucerne Valley, appeals the denial of

her petition for writ of mandate (Writ) brought against respondents and defendants

1

California Fish and Game Commission (Commisssion); California Department of Fish and Wildlife (Department); Charlton H. Bonham, Director of California Department of Fish and Wildlife; and Sonke Mastrup, Director of California Fish and Game Commission (collectively, Wildlife Agencies). This appeal is a dispute over the refusal of the Wildlife Agencies to waive an approximately $300 inspection fee required pursuant to California Code of Regulations, title 14 (CCR) sections 671.1 and 703, required to be paid in order for Young to renew the permit for the Magic Jungle.

Young makes the following claims on appeal: (1) The lower court erred and demonstrated bias by ignoring Fish and Game Code section 2150, subdivision (c), and CCR 671.1, subdivision (b); (2) courts have a duty to avoid absurd results; (3) the lower court erred and demonstrated bias by not applying Code of Civil Procedure section 1094.5, subdivisions (b) and (c); (4) the lower court erred by not applying the mandatory requirements of Government Code section 11500; (5) the lower court erred and demonstrated bias by making factual findings that were without support, which may be drawn from the facts in the record; (6) the lower court erred and demonstrated bias by permitting extra record evidence; (7) the lower court erred and demonstrated bias by not weighing all of the evidence before it; (8) the lower court erred and demonstrated bias by refusing to consider the opinion of the Fifth Circuit Court of Appeal and the truth of matters asserted in it; (9) the lower court erred and demonstrated bias by not issuing writ relief pursuant to Code of Civil Procedure section 1085, subdivision (a); (10) the lower court erred and demonstrated bias by denying the Writ because writ relief was warranted here; (11) the lower court erred and demonstrated bias by alleging that CCR section

2

671.1, subdivision (b)(10), did not provide for a waiver of the application, nor inspection fee; and (12) the lower court's failure to issue a statement of decision is reversible error per se.

A majority of Young's claims have been waived by her making only conclusory allegations and providing no legal authority and/or by failing to provide any citation to the record. The only issues that are properly reviewed by this court are whether the Wildlife Agencies could refuse to waive the inspection fee without consideration of the "justified reasons" or whether it was in the "best interests" of the public to waive the fee in light of Fish and Game Code section 2150, subdivision (c), and CCR section 671.1, subdivision (b)(1); and if reversal is warranted due to the trial court failing to issue a statement of decision.

## FACTUAL AND PROCEDURAL HISTORY

### A. THE DEPARTMENT'S DENIAL OF RENEWAL APPLICATION

Young, as an individual, operated the Magic Jungle, which housed restricted species wildlife, including one leopard, one mountain lion, two Indochinese Leopards and two Siberian Tigers. The first permit for the Magic Jungle had been issued by the Department in approximately 1990 and renewed each year thereafter. On August 8, 2013, Young filed her restricted species permit renewal application (Renewal Application) with the Department to renew her permit for the Magic Jungle. She included information on the Renewal Application that she had one to five enclosures for animals and checked that the standard inspection fee would be $227.91. Young represented on the Renewal Application that the Magic Jungle was exempt from payment

3

of the permit fee, non-refundable application fee and inspection fee. Her existing permit was set to expire on November 9, 2013.

The Department notified Young on July 14, 2014, that her Renewal Application was incomplete because the inspection fee had not been paid. The Department advised Young that it had agreed to waive the $56.14 permit fee and the $56.65 non-refundable application fee. However, she had to pay the $227.91 inspection fee. She was given 30 days to pay the fee. The Department explained that in order for a permit to be renewed, "The applicant must submit all of the documentation, information and fees required as part of the application process (Sections 671.1 (c)(2)(A) and 703, Title 14, of the CCR)."

The Department provided an internal memorandum regarding the waiving of the permit and application fee, which stated, "Based on Department staff's knowledge of [Young]'s facility from past inspections and the care she is giving to her animals, we determined it is in the best interest of the animals and the Department to waive the permit application fee pursuant to Title 14, Section 671.1(b)(1)." It noted, "The fee waiver is only for the permit application fees and does not waive [Young]'s inspection fees. Title 14, Section 671 does not provide the [Department] the authority to waive any other fees."

In the denial of the Renewal Application, the Department advised Young that she could pay the $227.91 inspection fee along with a corrected application within 30 days. She was advised that if she chose not to pay the fee, her facility would have to transfer the animals to another facility. She could appeal the decision to the Commission but would need to submit the inspection fee, which would be refunded if she was successful on appeal.

Notice of denial of the Renewal Application was sent to Young by the Department on September 19, 2014.

B.      COMMISSION REVIEW

Young filed a notice of appeal from the denial of her Renewal Application.  On November 4, 2014, a request to set a hearing on the appeal of the denial of the Renewal Application was filed with California's Office of Administrative Hearings (OAH).  On March 12, 2015, the OAH issued its proposed decision pursuant to CCR section 671.1, subdivision (c)(7)(A).[1]  The OAH proposed decision summarized the proceedings in front of the Department.

Numerous exhibits were considered by the OAH.  These included a letter from the Commission that it would be submitting the appeal for decision to the OAH and that all submissions would be in writing.  Young objected to the OAH deciding the matter.  The exhibits also included Young's opening brief.  Young argued that Fish and Game Code sections 200, 220, 240, 1002, 2116, 2118.5 and 2150, subdivision (b)[2]; CCR section

---

[1] CCR section 671.1, subdivision (c)(7)(A), provides in pertinent part:  "Any applicant or permittee who is denied a permit, an amendment to an existing permit or has a permit suspended or revoked by the department pursuant to these regulations may appeal that denial, suspension, or revocation by filing a written request for an appeal with the commission."

[2] The current version of the Fish and Game Code designates this section as 2150, subdivision (c).

671.1, subdivisions (b), (b)(3), and (b)(10); and CCR section 671.8 all provided that the Department had the authority to waive the inspection fee.[3]

Young asked that the OAH take judicial notice of the Fish and Game Code sections and CCR sections cited in her brief. This included Fish and Game Code section 2150, subdivision (c), which provided that American Zoo and Aquarium Association (AZA) accredited facilities were "exempt from any permit requirement pursuant to this chapter." It further provided, "Any California organization which is not accredited by the AZA may apply to the department for a waiver of specified permit requirements of this chapter. The department may grant or deny the request for a waiver for justified reasons." Further, Young relied upon CCR section 671.1. Subdivision (a) of this section provides, "It is unlawful for any person to import, export, transport, maintain, sell, dispose of, or use for any purpose any animal restricted by Section 671 except as authorized in a permit issued by the department." Subdivision (b)(10) of CCR section 671.1 provides, "The permit fee may be waived upon recommendation of the regional manager when he/she determines it is in the best interest of the public, the animal, or the department to do so."

In addition, she sought judicial notice of a minute order in another case (*Exotic Feline Breeding Compound, Inc. v. Department of Fish and Wildlife* (June 22, 2016, F070449) [nonpub. opn.] (*Exotic Feline*)), which did not involve these parties, and a

---

[3] Young presented evidence regarding the adoption of amendments of CCR sections 671.1, 671.8 and 703 and her objections. This appeal does not address the issue that the regulations were improperly added and amended.

compact disk of Commission meetings wherein amendments were made to the CCR sections applicable here.

The Department filed a response. The Department referred to CCR section 671.1, subdivision (b)(10), which addressed waiver of permit fees and that Young was notified waivers needed to be requested on a case-by-case basis. The Department contended that there was no authority in the Fish and Game Code or CCR that allowed a shelter to receive a waiver of the inspection fee. The general statute regarding waiving of fees in Fish and Game Code section 2150 did not apply. Further, CCR section 671.8 only applied to new facilities. Moreover, it rejected a claim by Young—that someone at the Commission orally waived the inspection fee—because it was not supported by any evidence.

The Department attached several exhibits. One of the exhibits was a response from the Department on August 6, 2013, regarding a request for waiver of all fees from Young. The Department advised Young it was bound by CCR sections 671.1, subdivisions (b)(10), and 703, which did not provide for a waiver of the inspection fees. If the Department were to hold otherwise, it would result in an "underground regulation" in violation of the American Procedure Act (APA).

In its proposed decision, the OAH found that Young had failed to cite any statutory or regulatory authority that the Department had authority to waive the inspection fee. CCR section 671.1, subdivision (b)(10), limited the Department's authority to waive fees. The inspection fee was authorized by CCR sections 671.1, subdivision (c)(2)(B), and 703, subdivision (a)(1)(A)(19). The Department had

7

interpreted these sections to allow for waiver of the application fee but not the inspection fee. The OAH rejected that Fish and Game Code section 1002 supported Young's argument as it only applied to scientific collection permits. Further, CCR section 671.8, subdivision (a), was inapplicable because it only applied to new facilities. The OAH relied upon CCR section 671.1, subdivisions (a), (b), (b)(10), (c)(2), and section 703, subdivision (a)(1)(A), to conclude there was no authority to waive inspection fees.

The OAH also noted that CCR section 671.1, subdivision (c)(7), authorized it to decide the matter on written submissions only. The proposed decision would be submitted to the Commission for approval. If a party disagreed with the Commission's decision, that party could request judicial review by filing a petition for writ of mandate in accordance with Code of Civil Procedure section 1094.5.

The adoption of the proposed decision was to be heard by the Commission at its next meeting in June 2015. On June 10, 2015, the Commission adopted the proposed decision of the OAH. The notice of decision was served on June 18, 2015.

C.      PETITION FOR WRIT OF MANDATE FILED IN SUPERIOR COURT

On June 25, 2015, counsel representing Young filed the Writ in the superior court pursuant to Code of Civil Procedure sections 1085 and 1094.5, accompanied by a memorandum of points and authorities. Young sought a writ of mandate to require the Department to perform its duty to determine whether "justified reasons" existed to grant or deny Young's request for a waiver of certain restricted species permitting fees pursuant to Fish and Game Code section 2150, subdivision (c). Further, under CCR section 671.1, subdivision (b)(10), the Department could waive fees if it was in the "best

8

interests" of the public. Inspection fees should be included in the fees that could be waived by the Department. The Department had a blanket policy not to apply the waiver to inspection fees, which was an unlawful " 'underground regulation.' "

Young admitted she had never sought to have Magic Jungle be designated an AZA accredited zoo. She argued that AZA zoos are exempt from permit requirements pursuant to Fish and Game Code section 2150, subdivision (c). Under Fish and Game Code section 2150, subdivision (c), any California organization can apply for a waiver of permit requirements with "justified reasons." In 2012, CCR section 671.1 was amended to disallow veterinarians to perform inspections[4] and section 703 detailed the amount of fees.

Young summarized the applications she submitted to the Department seeking a waiver, the Department's denial, and the Commission's ultimate adoption of the OAH's proposed decision. Young's primary argument was that the Department had to exercise its discretion to determine whether the inspection fees should be waived. Young argued that such determination was required by Fish and Game Code section 2150, subdivision (c), and CCR section 671.1, subdivision (b)(10).

Young's first cause of action was for failure to undertake a mandatory legal duty. The Department had a blanket policy of denying requests for waiver of inspection fees; Young contended it had a mandatory duty to determine waiver of these fees based on "best interests" or "justified reasons." Young's second cause of action was for a

---

[4] Shelters such as the Magic Jungle were previously able to have volunteer veterinarians perform inspections with no cost to the state.

9

violation of the APA as the Department was using an illegal underground regulation by adopting a blanket policy not to allow waiver of inspection fees.

Young's third cause of action was pursuant to Code of Civil Procedure section 1094.5, the review of a final administrative order. Young contended that the Department and Commission proceeded in this matter in excess of jurisdiction. Young sought in her prayer for relief that the superior court vacate the Commission's order and enjoin the Department from rejecting outright waivers of inspection fees and instead mandate review based on "best interests" and "justified reasons."

Young submitted her own declaration in support of the Writ. She declared she was an expert in the field of large carnivore endangered species wildlife. She was approved in 2004 to run the Magic Jungle by the United States Department of Agriculture, San Bernardino County Department of Environmental Health Services/Animal Control and the Department. She had passed the most recent inspection in 2015.

Young relied on *Exotic Feline*, which she stated challenged the denial of waivers for permit fees. She had declined to become an AZA accredited zoo even though she met the standards. Young explained that prior to the enactment of CCR section 671.8, veterinarians did inspections, not Department employees. She opposed the changes to the CCR but the Commission adopted the changes to the CCR in April 2013. Young insisted that employees of both the Commission and the Department advised her orally that all of the fees would be waived.

10

Several exhibits were attached to the Writ and Young's declaration. Many pertained to the prior positive inspections at the facility. Others related to the adoption of the amended CCR sections. Additional exhibits included the documents filed for the proceedings in the OAH and the denial of her request for waiver of the application fee.

One of the exhibits was the written response by the Department in the proceedings in the OAH. They argued that no waiver of inspection fees was authorized by any Fish and Game Code or CCR. It contended that CCR section 671.1, subdivision (b)(10), did not support that all fees could be waived. Further, the general permit waiver in Fish and Game Code section 2150, subdivision (c), did not apply; the more specific CCR section 671.1, subdivision (b)(10), applied.

On July 14, 2015, Young requested that the Wildlife Agencies prepare the administrative record. On July 29, 2015, the parties stipulated to stay the enforcement of the failure of Magic Jungle to obtain a permit until the Writ was resolved. On September 18, 2015, Young's counsel filed a motion asking to be relieved as counsel based on substantial, irreconcilable differences and breakdown in the working relationship between the law firm and Young. Young opposed the motion. The motion was granted by the trial court.

On December 7, 2015, Young, now in propria persona, filed a motion seeking to have the administrative record lodged with the trial court as previously requested. The Wildlife Agencies had refused to lodge the record. Young was sent notice that the Wildlife Agencies had prepared the administrative record but that she would have to pay

11

$573.37 for the preparation and copying. The Wildlife Agencies declared it did not have to lodge the record until the record was paid for by Young.

Young filed an ex parte application for issuance of alternative writ of mandate and order staying enforcement proceedings on November 30, 2015. She sought to enjoin the Wildlife Agencies from enforcing the "underground regulation" that the inspection fees could not be waived, and vacate the denial of her permit until the Writ was resolved.

On December 14, 2015, the Wildlife Agencies filed opposition to the stay of enforcement ex parte application. The ex parte application was denied by the trial court but it ordered that no animal should be euthanized by the Department pending the outcome of the Writ. On December 30, 2015, Young filed a notice of lodging of the certification and the administrative record. The Wildlife Agencies opposed Young's motion to lodge the record, which was self-certified by Young.

On March 1, 2016, the Wildlife Agencies lodged the administrative record. Young represented that the record was incomplete. Young filed a motion to supplement the administrative record. She sought to have records regarding amendments to the CCR, permits for Magic Jungle, and correspondence regarding the denial of the waiver included in the administrative record. The Wildlife Agencies objected to the inclusion of the evidence requested by Young. It had no relevance to the proceedings. Young's motion to strike the administrative record was denied. Young was allowed to supplement the record.

D.    BRIEFING IN SUPPORT OF WRIT

Young filed her opening brief in support of the Writ on March 31, 2016.  Again, relying upon CCR section 671.1, subdivision (b)(10), and Fish and Game Code section 2150, subdivision (c), Young argued that the Department was required to consider "justified reasons" or "best interests" before refusing to waive inspection fees for non-AZA accredited shelters.  She contended that she was denied a fair hearing by the OAH.

The Wildlife Agencies filed a responding brief on July 1, 2016.  They argued that CCR section 671.1, subdivision (c)(2)(A)(B), provided that an inspection fee was required for renewal of permits.  This section required that a permit fee and an inspection fee be paid.  While there was language in CCR section 667, subdivision (b)(10), that provided for waiver of the permit fee, there was no similar provision providing for a waiver of the inspection fee.  Further, no Fish and Game Code section provided for waiver of inspection fees.  The Wildlife Agencies argued that "permit requirement" in section 2150 were those requirements in CCR section 671.1, subdivision (c)(3); these did not include inspection fees.  There was no underground regulation because there was no authority for waiving inspection fees.

The Wildlife Agencies also stated that Young could not claim she was entitled to a hearing in the OAH because she did not raise the issue in the Writ.  Moreover, she could not raise there was an oral agreement to waive her fee as it was not raised in the Writ and she had provided no authority that such an agreement could be made.  The Wildlife Agencies also filed an answer to the Writ.

13

Young filed a reply to the opposition on July 25, 2016. She stated that the trial court must conduct a de novo review. Fish and Game Code section 2150, subdivision (c), and CCR section 667.1, subdivision (b)(1), unambiguously allowed for waiver of permit requirements.

On July 25, 2016, Young filed a request for statement of decision pursuant to Code of Civil Procedure section 632. Young sought a determination of 40 separate questions. She requested judicial notice of the unpublished appellate decision in *Exotic Feline*. The Wildlife Agencies objected to both requests.

E.     TRIAL COURT'S ORDER DENYING WRIT

The matter was heard on August 12, 2016. The trial court noted that review was de novo because the trial court was merely interpreting a regulation. There were no disputed facts and review was simply of the language of the regulation. The trial court stated, "My tentative ruling is to deny this writ. I do not think that section 671.1 (b)10 embraces inspection fees. It embraces only permit fees." The trial court noted that the Department waived the application fee, but the court did not think there was authority to waive such fee. That issue was not before the trial court and it would not rule on the issue. It noted that inspection fees were provided for separately in CCR section 671.8, subdivisions (b) and (c).

The trial court stated, "And I think the history tells us a little bit of a reason for this. In the past these inspections were conducted by veterinarians who were volunteering their time to do this, so there wasn't an expense to the public. [¶] And I understand there was some unfortunate incidents that happened that led to the enactment

14

of these regulations. And these inspections are for the health and safety of the animals, as well as the health and safety of the public. And that's why the inspection fee is mandated. [¶] It simply isn't found within the one section that allows the waiver of the permit fee. So that's what I think the statute means."

Young argued that the trial court was overlooking Fish and Game Code section 2150, subdivision (c), which allowed for waiver of all permit requirements. The trial court refused to take judicial notice of the *Exotic Feline* case because it was an unpublished appellate opinion. The trial court then expressed it was having difficulty finding Fish and Game Code section 2150. Once the trial court reviewed the language, after having it provided by Young, the trial court stated, "So although this statute doesn't talk about inspection fees, it's your position that that's a permit requirement to have an inspection fee so this statute authorizes that waiver as well." Young referred to an admission by the Department to an inquiry made by her that inspection fees were part of the permit requirement.

The Wildlife Agencies responded that such interpretation was incorrect. The waiver only applied to permit fees and not inspection fees based on the plain language of the statute. Young responded that the permit requirements were all inclusive and included the inspection fees. Young was entitled to the waiver under Fish and Game Code section 2150 and CCR section 671.1, subdivision (b)(10).

After the hearing, the matter was taken under submission. A minute order was issued on August 18, 2016, denying the Writ. Judgment was entered denying the Writ on September 16, 2016. Young filed a timely notice of appeal.

15

## DISCUSSION

Young makes the following claims on appeal: (1) The lower court erred and demonstrated bias by ignoring California Fish and Game Code section 2150, subdivision (c), and CCR 671.1, subdivision (b); (2) Courts have a duty to avoid absurd results; (3) the lower court erred and demonstrated bias by not applying Code of Civil Procedure section 1094.5, subdivisions (b), and (c); (4) the lower court erred by not applying the mandatory requirements of Government Code section 11500; (5) the lower court erred and demonstrated bias by making factual findings that were without support, which may be drawn from the facts in the record; (6) the lower court erred and demonstrated bias by permitting extra record evidence; (7) the lower court erred and demonstrated bias by not weighing all of the evidence before it; (8) the lower court erred and demonstrated bias by refusing to consider the opinion of the Fifth Circuit Court of Appeal and the truth of matters asserted in it; (9) the lower court erred and demonstrated bias by not issuing writ relief pursuant to Code of Civil Procedure section 1085, subdivision (a); (10) the lower court erred and demonstrated bias by denying the Writ because writ relief was warranted here; (11) the lower court erred and demonstrated bias by alleging that CCR section 671.1(b)(10), did not provide for a waiver of the application, nor inspection fee; and (12) the lower court's failure to issue a statement of decision is reversible error per se.

### A. WAIVER

Initially, many of Young's arguments in her appellant's opening brief are confusing or fail to be supported by reference to the record or legal authority and will not be addressed.

16

California Rules of Court, rule 8.204(a)(1)(B) provides that each brief must "State each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority." Rule 8.204(a)(1)(C) provides that each brief must "Support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."

"The appellate court is not required to search the record on its own seeking error. . . . [A]ny point raised that lacks citation may, in this court's discretion, be deemed waived." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.) Thus, "[i]f a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived." (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856; see *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [reviewing court may disregard contentions unsupported by citation to the record or legal authority].)

Young's arguments (2), (3) and (4) either don't provide citation to the record or are unintelligible. Although in these arguments Young refers to bias on the part of the "lower court," she fails to state whether it was the OAH or the trial court, and there are no citations to the record showing bias. In argument (5), Young complains the trial court failed to address Fish and Game Code section 2150, subdivision (c), and had a bias against her based on its comment that "unfortunate incidents" had occurred at wildlife sanctuaries that led to the regulations on inspections. The trial court specifically addressed Fish and Game Code section 2150. Further, the trial court did not show bias but rather was discussing the implementation of regulations.

17

Young complains in argument (6) about extra record evidence that the trial court considered that was submitted by the Wildlife Agencies. However, she provides no citation to the record where it was admitted and what bearing these records had on the issues decided by the trial court. Young argues in argument (7) that the "lower court" demonstrated bias by not weighing all of the evidence before it. Young's argument provides neither relevant legal authority, nor does she cite to the record.

Young complains in argument (8) that the lower court erred by not allowing in the unpublished opinion by the Fifth Circuit Court of Appeal in the *Exotic Feline* case. She relies on California Rules of Court, rule 8.1115; however, rule 8.115(e)(1) provides that an unpublished opinion can be cited only when review has been granted by the California Supreme Court. Young provides no argument or evidence here, or below, that review has been granted. Our research reveals that review was not granted.[5]

Young makes a general argument in argument (9) that the "lower court" erred and demonstrated bias by not issuing writ relief. She provides only case law with no argument as to how the trial court erred. Such argument is not reviewable here.

The only proper arguments in front of this court include arguments (1), (10) and (11) which all raise the issue that Fish and Game Code section 2150, subdivision (c), and CCR section 671.1, subdivision (b)(10), provide for a waiver of the inspection fee. Further, argument (12) properly raises whether the trial court erred by not providing a statement of decision.

---

[5] Young's requests for judicial notices dated May 31, 2017, and June 1, 2017, are denied.

B.    STATEMENT OF DECISION

Young complains that the trial court did not issue a statement of decision and that reversal is required. Code of Civil Procedure section 632 provides in part: "In superior courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial." Young requested a statement of decision. Here, the trial court specifically stated it was only deciding issues of law and that there was no dispute as to the facts. "It is axiomatic that a statement of decision is required only as to issues of fact decided by the trial court ([Code Civ. Proc.,] § 632: 'upon the trial of a question of fact by the court'), not as to issues of law." (*City of Coachella v. Riverside County Airport Land Use Com.* (1989) 210 Cal.App.3d 1277, 1291-1292.) No statement of decision was required.

C.    WAIVER OF INSPECTION FEES

Here, the only issue in front of this court is the interpretation of the Fish and Game Code and the CCR, e.g. issues of law. "An order granting a motion to dismiss a petition for writ of mandate is reviewed de novo." (*Friends of Riverside's Hills v. City of Riverside* (2008) 168 Cal.App.4th 743, 748; see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [appellate court reviews the application of decisional law de novo].) In reviewing an administrative writ of mandate pursuant to Code of Civil Procedure section 1094.5, issues of law are entitled to de novo review. (*Norasingh v. Lightbourne* (2014) 229 Cal.App.4th 740, 753.) "In this regard, we acknowledge that an

19

administrative agency's interpretation of its governing regulations . . . is entitled to 'great weight and deference.' [Citation.] It is not, however, dispositive. [Citation.] Further, ' " '[w]hen the facts do not conflict and the issues involve proper application of a statute or administrative regulation, a reviewing court is not bound by the trial court's determination.' " ' ") (*Id.* at pp. 753-754.)

The trial court applied its independent review and we likewise apply our independent review. Moreover, it is a settled appellate principle that if a judgment is correct on any theory, the appellate court will affirm it regardless of the trial court's reasoning. (*Cahill v. San Diego Gas & Elec. Co.* (2011) 194 Cal.App.4th 939, 956.)

Fish and Game Code section 2116.5 provides in pertinent part: "It is the intention of the Legislature that the importation, transportation, and possession of wild animals shall be regulated to protect the health and welfare of wild animals captured, imported, transported, or possessed, to reduce the depletion of wildlife populations, to protect the native wildlife and agricultural interests of this state against damage from the existence at large of certain wild animals, and to protect the public health and safety in this state."

The Fish and Game Code authorizes the Department to issue written permits to possess any wild animal designated as a restricted species, upon a determination that no detriment will be caused to agriculture, native wildlife, the public health and safety, or the welfare of the animal. (Fish and Game Code, § 2150, subd. (a)(1).) The statute exempts zoos accredited by the AZA from the "permit requirements" and authorizes unaccredited organizations to apply for waiver of "specified permit requirements of this

20

chapter." (Fish and Game Code, § 2150, subd. (c).) The Department may "grant or deny the request for a waiver for justified reasons." (*Ibid.*)

Fish and Game Code section 2150.2 provides, "The department shall establish fees for permits, permit applications, and facility inspections in amounts sufficient to cover the costs of administering, implementing, and enforcing this chapter." Fish and Game Code section 2150.4 provides, "The department or an eligible local entity shall inspect the wild animal facilities, as determined by the director's advisory committee, of each person holding a permit issued pursuant to Section 2150 authorizing the possession of a wild animal."

"The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] To determine legislative intent, we turn first to the words of the statute, giving them their usual and ordinary meaning." (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340.) "When the language of a statute is clear, we need go no further." (*Ibid.*) "If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190.)

The Legislature's chosen language is the most reliable indicator of its intent because " 'it is the language of the statute itself that has successfully braved the legislative gauntlet.' " (*California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 338.) "We will not follow the plain meaning of the statute 'when to do so would "frustrate[] the manifest purposes of the legislation as a whole or [lead] to absurd

21

results." ' [Citations.]  Instead, we will ' "interpret legislation reasonably and . . . attempt to give effect to the apparent purpose of the statute." ' " (*MacIsaac v. Waste Management Collection and Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1083.)

Here, the plain language of Fish and Game Code section 2150, subdivision (c), provides that "a zoo is exempt from any permit requirement pursuant to this chapter."  It also provides any California organization may apply to the department for a "waiver of specified permit requirements of this chapter."  This language does not entitle Young to a blanket waiver of all permit requirements and fees.  This language makes no mention of fees and only allows a non-AZA organization to apply to have "specified permit requirements" waived, not an entire waiver.  Permit fees are addressed in Fish and Game Code section 2150.1, which separates permit fees, applications fees and inspection fees. Further, Fish and Game Code section 2150.2 gives the Department wide discretion to determine the appropriate fees to implement the chapter.  This is reasonable as inspections cost the Department money and are necessary to effect the purpose of the statute to protect wildlife and the public.  This does not provide the authority to the Department to waive inspection fees for an organization like the Magic Jungle.

CCR provides for the process of implementing the Fish and Game Code as authorized by Fish and Game Code section 2150.2.  CCR section 671.1, subdivision (b)(1) is entitled "Permits and Fees" and lists the types of permits that can be issued by the Department.  Subdivision (b)(3) provides for a type of permit for, "AZA.  Issued to any person accredited by the Association of Zoos and Aquariums (AZA) and who is in the business of exhibiting and breeding animals.  The permittee may import, transport,

22

breed, exhibit and possess for bona fide scientific or public health research only those species specified on the department approved permit. Additional requirements are specified in subsection 671.1(c)(3)."

CCR section 671.1, subdivision (b)(10), provides another type of permit as follows: "Shelter. Issued to any person who is a resident, who possesses the qualifications listed in subsection 671.1(c)(1), and who has a statement in writing signed by the department's regional manager with jurisdiction over the proposed facility verifying the need for a shelter or similar facility in the area, to transport and possess restricted species for humane purposes only. The *permit fee* may be waived upon recommendation of the regional manager when he/she determines it is in the best interest of the public, the animal, or the department to do so. Additional requirements are specified in subsection 671.1(c)(3)." (Italics added.)

CCR section 671.1, subdivision (c), is entitled "Qualifications, Application Fees, and Permit Information." Subdivision (c)(2) is entitled "Fees" and provides, "The following application and inspection fees specified in Section 703 are required and shall be adjusted annually." Subdivision (c)(2)(B) is entitled "Inspection" and states in pertinent part, "The applicant shall pay an inspection fee for the type of inspection as required in Section 671.8."

23

CCR section 671.1, subdivision (c)(3), is entitled "Application" and provides, "The applicant for a new permit, amendment to an existing permit, or permit renewal shall submit the completed application or document, *and fee*, as specified in Section 703, to the address listed on the application." (Italics added.) CCR section 703 provides for a $53.50 application fee for a renewal and a separate fee for inspections based on the number of enclosures. CCR section 671.8, subdivision (b), provides for inspection of facilities as follows: "The applicant for a restricted species permit shall submit payment of the inspection fee to the department, as specified in Section 703, for the inspection of the applicant's caging or holding facility(ies) and animal(s) each permit year."

The language of the CCR is clear. An applicant for a renewal of a permit must submit an application fee and inspection fee with the request for a permit. The applicant must meet certain requirements in order for it to be granted a permit. (See CCR § 671.1, sections (c)(A)-(c)(M).) While CCR section 671.1, subdivision (b)(10), specifically provides for a waiver of the "permit fee" no other language in the regulations allows for the waiver of the inspection fee. It is clear the inspection fee is separate from the permit fee. Young certainly was entitled to seek a waiver of the permit fee pursuant to CCR section 671.1, subdivision (b)(10), and was granted such waiver, but nothing in the regulations entitled her to the waiver of the inspection fee, which was a separate fee.

Neither Fish and Game Code section 2150, subdivision (c), nor CCR section 671.1 give the Department authority to waive an inspection fee. The Writ was properly denied.

24

## DISPOSITION

The trial court's order denying the petition for writ of mandate is affirmed.

Respondents are awarded their costs on appeal.

CERTIFIED FOR PUBLICATION

MILLER
_____
J.

We concur:

McKINSTER
_____
Acting P. J.

CODRINGTON
_____
J.