Filed 2/14/23  Li v. Yu CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| HONGHUA LI, | H049801 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 20CV367955) |
| v. | |
| HAILING YU et al., | |
| Defendants and Appellants. | |

Defendants Hailing Yu, Zhong Zheng, and Angelina Wang appeal from an order denying their motions to compel arbitration.  The trial court found they had failed to prove that plaintiff Honghua Li had entered into an agreement to arbitrate the dispute.  We conclude that defendants have not shown the trial court erred in this finding and affirm the order.

## I.  FACTS AND PROCEDURAL BACKGROUND

A.  *Lawsuit and Allegations*

In 2020, Li sued five individuals, including Yu, Zheng, and Wang (together, defendants), for defamation.[1]  As alleged in her operative complaint,[2] Li works for a

_____

[1] Li also named Xiang Wu and Lihong Peng as defendants, but they are not parties to this appeal.  There is no indication in the record that Wu or Peng sought arbitration against Li.

[2] The operative complaint is Li's second amended complaint.

company called Nu Skin International, Inc. (Nu Skin). Nu Skin is a Utah-based company that sells personal care products and dietary supplements through a network marketing program. Li is an "independent contractor and a distributor-member who sells/advertises" Nu Skin's products and supplements. Defendants also worked for Nu Skin's marketing program.

Defendants were involved in an informal Bay Area networking group created for members of Nu Skin's marketing program. Li claimed defendants used this informal group to disseminate "abusive and false claims" about her.

Li alleged in her complaint that, in response to the defendants' defamatory assertions, Nu Skin's "compliance department" in 2019 restricted Li's commissions and demoted her. However, in 2020, following an internal review process, Nu Skin reinstated Li's "ranking, recognition, and ability to generate income through her Downline Organization." Li alleged she suffered damages as a result of defendants' conduct, including by losing customers in her network.

Defendants filed verified answers to the complaint, and the parties engaged in discovery and pretrial litigation.[3]

B. *Motions to Compel Arbitration*

In September 2021, approximately 15 months after Li first filed suit, Zheng and Wang filed a motion to compel arbitration pursuant to Code of Civil Procedure section 1281 et seq.[4] They argued Li and "all defendants" were parties to an applicable written agreement to arbitrate and requested a stay of the court proceedings pending completion

___

[3] Much of that litigation is not directly relevant to this appeal. On October 25, 2022, defendants filed in this court a request for judicial notice in support of their reply brief requesting that we take judicial notice of two pleadings (a complaint and a first amended complaint) that Li filed in a separate action in San Mateo County Superior Court. Li opposes defendants' request for judicial notice. Because these two pleadings from a different action are immaterial to our analysis here, we deny defendants' request. (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4.)

[4] Unspecified statutory references are to the Code of Civil Procedure.

of arbitration. Zheng and Wang asserted the agreement to arbitrate was included in Nu Skin's "Policies and Procedures" and that Li's "acceptance of the Nu Skin Policies and Procedures can be inferred from [Li's] continuation in the program after the current 2018 Policies and Procedures were promulgated." The motion quoted from Chapter 7 of the "current Nu Skin Policies and Procedures" related to arbitration that contains language related to Nu Skin's "mandatory arbitration procedure."

In support of their motion to arbitrate, Zheng and Wang submitted a declaration from Zheng. Zheng's declaration stated she was a brand affiliate of Nu Skin and that all members of the "Nu Skin marketing program" are brand affiliates. Zheng further stated that Nu Skin "publishes its Policies and Procedures governing its sales and marketing program and which forms an integral part of the contract between Nu Skin and its Brand Affiliates" and that Nu Skin "requires that all Brand Affiliates comply with its Policies and Procedures as a condition of continuing participation in its marketing program."

The Zheng declaration attached a copy of the "current Nu Skin Policies and Procedures published on its website which were enacted in 2018" and a copy of "Chapter 7 of the Policies and Procedures entitled 'Arbitration.'"

Yu separately filed a motion to compel arbitration and to stay the court proceedings. Similar to Zheng's and Wang's motion, Yu's motion quoted relevant provisions from Chapter 7 of Nu Skin's policies and procedures related to mandatory arbitration. Yu contended that Li was also bound to arbitrate her claims pursuant to the "Nu Skin Brand Affiliate Agreement – USA" which contains a written arbitration clause. Yu's motion quoted the language from that agreement, including that "I agree that any Dispute will be resolved and settled in accordance with and pursuant to the terms and conditions of this Contract, and by the rules and procedures set forth in Chapter 7 (Arbitration) of the Policies and Procedures." (Boldface and italics omitted.) The agreement defines " 'Dispute' " in part as "any and all past, present or future claims, disputes, causes of action or complaints, whether based in contract [or] tort . . . between

3

other Brand Affiliates and me arising out of or related to a Brand Affiliateship, or our business relationships as independent contractors of the [] Nu Skin." (Boldface omitted.)

Yu submitted an accompanying declaration that stated, inter alia, that she was a brand affiliate for Nu Skin and all members of the Nu Skin marketing program are brand affiliates. Yu attached to her declaration the same 2018 policies and procedures (including chapter 7 discussing arbitration) as those submitted by Zheng and Wang. She noted that "[Li] voluntarily became and remains a Brand Affiliate of Nu Skin."

Additionally, Yu attached to her declaration a blank template of a "Brand Affiliate Agreement - USA" for Nu Skin (hereafter brand affiliate agreement). Yu asserted "[n]o individual who resides in the United States may become or remain a member of Nu Skin's Brand Affiliate without agreeing to Nu Skin's" brand affiliate agreement and declared that [Li] resided in the United States and "voluntarily became and remains a Brand Affiliate of Nu Skin."

Defendants did not submit to the court any agreement that referenced Li or was signed by Li.

C. *Li's Opposition*

Li filed a consolidated opposition to defendants' motions to compel arbitration (opposition). Li asserted defendants had failed to meet their burden to establish a valid agreement between Li and Nu Skin that compels arbitration of the dispute. Li acknowledged that defendants had proffered agreements but argued that "Defendants have 1) not authenticated the proffered Agreements; and 2) have failed to show evidence that the Agreements are related in any way to [Li's] account with[] Nu Skin."

Li argued the agreements submitted by defendants were inadmissible hearsay. Li also contended that defendants had failed to demonstrate that Li had agreed to be bound by an arbitration provision, asserting that defendants had provided only "unsigned agreements purportedly downloaded from Nu Skin's website that were published in 2018." Li noted that "None of the proffered Agreements references Plaintiff's name, Nu

4

Skin account or ID, or signature." Li also challenged the statements, based on lack of personal knowledge, that Yu and Zheng had made in their declarations that Li had voluntarily become and remained a brand affiliate of Nu Skin and all brand affiliates had to comply with the agreements as a condition of continuing to participate in its marketing program.

Li did not submit a declaration to the trial court and did not assert she had not entered into an arbitration agreement. She did not dispute she was and continues to be a brand affiliate for Nu Skin.

Li's counsel filed a declaration that generally discussed the litigation events prior to the motion to compel arbitration, including discovery and Yu's unsuccessful anti-SLAPP motion.

D. *Defendants' Reply*

In reply to Li's opposition, defendants stated that they had proven the existence of the "two arbitration agreements"—which they described as Nu Skin's brand affiliate agreement and chapter 7 of Nu Skin's policies and procedures. Defendants noted that Li had never asserted the agreements did not exist.

In connection with their reply, defendants also submitted another declaration by Yu dated December 9, 2021 (reply declaration). Yu stated she had inquired with the director of global compliance at Nu Skin "about whether [Li] entered into" the two arbitration agreements. In response to that inquiry, the director, Michael Mulvey, provided to Yu a "confirmation letter" (which Yu attached to the declaration) that stated "Please be advised that all Nu Skin Brand Affiliates must agree to the Brand Affiliate Agreement, including the Nu Skin Policies and Procedures, at the time of sign-up. As such, all existing Brand Affiliates are bound to the terms of the Brand Affiliate Agreement and the Policies and Procedures." Yu noted that she had asked Mulvey to provide a "formal declaration," but he had refused on the ground that he had consulted "with our legal team and we are unable to sign such declarations in legal matters between

5

two Brand Affiliates." The Mulvey letter did not mention Li by name or state that she was a Nu Skin brand affiliate.

Yu furthermore asserted in the reply declaration that Li had been and continues to be a brand affiliate for Nu Skin, and that based on Mulvey's "confirmation letter" Li had entered into the two arbitration agreements with Nu Skin. According to Yu, Li "must also have signed" the agreements "electronically" since Yu knew that "all Nu Skin agreements including the Two Arbitration Agreements are signed electronically."

E. *Trial Court's Ruling*

The trial court issued a written order denying defendants' motions to compel arbitration. The court found defendants had failed to meet their burden of "proving that a valid arbitration agreement exists between Nu Skin and [Li]." The court found, inter alia, that defendants had "failed to proffer any Agreement signed by [Li] or any other evidence that would support the contention that [Li] agreed to arbitrate the dispute" and noted that defendants had provided "unsigned documents which they apparently downloaded from Nu Skin's website that were purportedly published in 2018, but are not authenticated in any way."

The trial court acknowledged the decision in *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215 (*Condee*) that "normal procedures of document authentication are not required for a petition to compel arbitration and that the statute ([§] 1281.2) does not require the petitioner to introduce the actual agreement into evidence." However, the trial court found the facts in *Condee* distinguishable in that there was no "proffer of a declaration from any custodian of records as to the language pulled from the website and why it applies to [Li]." Addressing the Mulvey letter submitted in connection with defendants' reply, the trial court stated that the letter was not in the form of a declaration and did not make "any mention of [Li] or the language pulled from the public website" and failed to show the existence of an agreement to arbitrate.

6

Defendants timely appealed from the order denying their motions to compel arbitration.  (§ 1294, subd. (a); Cal. Rules of Court, rule 8.104(a)(1)(B).)

## II.  DISCUSSION

Defendants contend the trial court misapplied the governing law by requiring them to authenticate the arbitration agreements.  Li counters that the trial court correctly denied their motions to compel arbitration given their failure to prove there was an agreement to arbitrate between Li and Nu Skin.[5]

A.  *Legal Principles and Standard of Review*

California and federal law favor arbitration.  (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195.)  " '[B]ut there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate.' "  (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1220; see also *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1054.)

Section 1281.2 requires the superior court to order arbitration of a controversy "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy . . . *if it determines that an agreement to arbitrate the controversy exists*."  (§ 1281.2, italics added.)  Therefore, before granting a petition to compel arbitration, the trial court must determine "the existence or validity of the arbitration agreement."  (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 402, 413 (*Rosenthal*).)  "The trial court sits as the trier of fact, weighing all the affidavits, declarations, and other documentary evidence, and any oral testimony the court may

---

[5] Li's brief requests that we consider whether to impose sanctions "due to the frivolous nature of this appeal."  Li's request does not comply with the California Rules of Court, and we therefore decline to consider it.  (See Cal. Rules of Court, rule 8.276(b)(1); *FEI Enterprises, Inc. v. Yoon* (2011) 194 Cal.App.4th 790, 807.)

receive at its discretion, to reach a final determination." (*Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 842.)

"Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence." (*Rosenthal*, *supra*, 14 Cal.4th 394 at p. 413; accord *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

To determine whether the parties have entered a binding agreement to arbitrate, courts apply the general principles of contract law. (See *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) "In California, '[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.' [Citations.] Generally, an arbitration agreement must be memorialized in writing. [Citation.] A party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement. A signed agreement is not necessary, however, and a party's acceptance may be implied in fact (e.g., [citation] [employee's continued employment constitutes acceptance of an arbitration agreement proposed by the employer]) or be effectuated by delegated consent [citation]. An arbitration clause within a contract may be binding on a party even if the party never actually read the clause." (*Ibid.*)

"Section 1550, subdivision 2, of the Civil Code establishes the rule that an essential component to a contract is the consent of the parties to the contract. [Citation.] Civil Code section 1565, subdivision 3 provides, '[t]he consent of the parties to a contract must be . . . [¶] . . . [¶] . . . [c]ommunicated by each to the other.' " (*Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164, 1170.)

" 'Where . . . the evidence is not in conflict, we review the trial court's denial of arbitration de novo.' " (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 765.) We review any findings of fact for substantial evidence. (*Id.* at p. 764.) "Where the decision 'is based on the court's finding that [the party seeking arbitration] failed to

8

carry its burden of proof, the question for the reviewing court is whether that finding is erroneous as a matter of law.' " (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 166 (*Gamboa*).) " ' " 'Specifically, the question becomes whether appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " ' " (*Ibid*.) If the order is correct on any theory, we will affirm regardless of the trial court's reasoning. (*Young v. California Fish and Game Commission* (2018) 24 Cal.App.5th 1178, 1192–1193.)

With these principles in mind, we turn to our analysis of defendants' claim that the trial court erred in denying their motions to compel arbitration based on their failure to prove the existence of an agreement to arbitrate between Li and Nu Skin.

B. *Analysis*

The trial court found that defendants failed to meet their burden based on insufficient evidence that Li had entered into an agreement to arbitrate. To the extent the trial court's determination was factual, we decide that substantial evidence supports this conclusion. Neither of the two agreements submitted by defendants included Li's name, Nu Skin account, signature, or any other information linking those documents to Li. Moreover, the Nu Skin director whose letter Yu submitted refused to submit a declaration as to Nu Skin's policies with respect to arbitration. Further, even accepting the veracity of the letter from the Nu Skin director, it did not reference Li or any agreement she had entered into with the company. The record thus clearly supports the trial court's finding that the purported agreements were "unsigned documents" and there was "no evidence that [Li] or an authorized representative signed or agreed to arbitrate."

Defendants do not meaningfully address the trial court's finding that there was no evidence of mutual assent to arbitrate the defamation claims. They rest their claim of error on the question of authentication, asserting that "authentication is not strictly required to show that an arbitration agreement exists" (boldface omitted) and rely

9

primarily on *Gamboa*, *supra*, 72 Cal.App.5th 158, and *Condee*, *supra*, 88 Cal.App.4th 215. We disagree with defendants' characterization of the trial court's decision as based solely on the question of authentication. The trial court, while acknowledging *Condee*, did not deem it controlling.[6] We discern no error in that ruling.

Further, we are not persuaded by defendants' reliance on *Condee* and *Gamboa*. Those cases do not address a scenario in which the party moving for arbitration was unable to produce a copy of the agreement allegedly entered into by the party opposing arbitration. Defendants fail to recognize that the trial court here concluded that they did not present prima facie evidence of an arbitration agreement entered into between Li and Nu Skin that would satisfy their burden of demonstrating, by a preponderance of evidence, the existence of such an agreement. Having reviewed the record, we cannot conclude the trial court's determination that defendants failed to carry their burden of proof was erroneous as a matter of law. (See *Gamboa*, *supra*, 72 Cal.App.5th at p. 166.) Accordingly, we affirm.[7]

## III. DISPOSITION

The December 17, 2021 order denying the motions to compel arbitration is affirmed. Li is entitled to her reasonable costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

---

[6] In its order, the trial court did not address *Gamboa,* which had been issued a few weeks earlier.

[7] In light of this conclusion, we need not consider Li's additional arguments that we may affirm the trial court's ruling because defendants failed to show the agreements apply to the defamation dispute and Yu waived her right to arbitrate the underlying dispute.

10

_____
                                            Danner, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P.J.

_____
Wilson, J.

**H049801**
*Li v. Yu et al.*