Filed 5/9/25  Watters v. Liu CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANDREW G. WATTERS,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>ZHENG LIU,<br><br>        Defendant and Appellant. | A168766<br><br>(San Mateo County<br> Super. Ct. No. 22-CIV-04056) |

Andrew G. Watters and Zheng Liu are both attorneys licensed in the State of California who came to know each other through Watters's representation of Liu's former girlfriend in connection with her restraining order request.  Shortly after Watters concluded his representation, Liu posted negative statements about Watters on Yelp.  Watters sued Liu for libel, libel per se, false light, and "tortious interference with business practices."  Liu filed a special motion to strike the complaint in its entirety as a strategic lawsuit against public participation (SLAPP) (Code Civ. Proc.,[1] § 425.16). The trial court granted in part and denied in part Liu's motion.  We affirm.

_____

[1] Further unspecified statutory references are to the Code of Civil Procedure.

1

# FACTUAL AND PROCEDURAL BACKGROUND[2]

## I. Communications Concerning the Domestic Violence Matter

On January 25, 2022,[3] Liu's former girlfriend Yi Fen Chen,[4] proceeding without counsel, filed for a temporary restraining order (TRO) under the Domestic Violence Protection Act (DVPA) (Fam. Code, § 6200 et seq.), seeking to prevent Liu from, among other things, having any contact with her.[5]  On that same date, the trial court granted the TRO and set the matter for hearing on February 16.  Chen retained Watters to represent her after obtaining the TRO but prior to the hearing.  Watters was running for United States Congress at the time.  Liu did not secure separate counsel and represented himself in the domestic violence matter.

On February 9, Watters telephoned Liu indicating his representation of Chen and asked Liu "to forward him all the case filings so far."  Liu informed Watters he had never been served with any "court papers" Chen may have filed.  "Watters abruptly hung up."[6]

---

[2] Watters and Liu elected to proceed on appeal without a reporter's transcript from the hearing or a settled statement, thus the information comprising the background section is taken from the appendices each party submitted.

[3] Subsequent dates are in 2022 unless otherwise noted.

[4] The record reflects two different spellings of Chen's first name:  Yi Fen and Yifen.  For consistency's sake, we use the name as it appears on Chen's application for a temporary restraining order:  Yi Fen Chen.

[5] *Yi Fen Chen v. Zheng Liu*, San Mateo County Superior Court case No. 22-FAM-00119.  We refer to the incident and associated legal proceedings as the "domestic violence matter."

[6] The record does not include proof of service of the TRO or a notice of substitution indicating when Watters began his representation, nor does it specify when Liu was made aware of either.

Liu contacted Chen directly; they "began negotiating a global settlement among themselves." Also on February 9, after learning that Liu had contacted Chen, Watters e-mailed Liu: "As you know, there is a temporary restraining order against you prohibiting you from contacting Chen. Despite this, you are persisting in emailing her about the case." Watters demanded that Liu "cease and desist from cc'ing [Chen] on our emails, which is a violation of the TRO. If you do it even one more time, I will advise her to call the police on you." Watters continued, "I'm sure you are aware that violating a restraining order is also a violation of the Business and Professions Code governing attorney licenses, and may result in attorney discipline."

Liu's response to Watters's e-mail is not part of the record, but later that same morning, Watters e-mailed Liu, "I've now blocked your email due to your harassment, violations of law, inappropriate communications, and bizarre behavior." Watters further directed, "don't contact me again unless you are mailing court papers to my office. Don't visit my office either, unless of course you are in the mood for fisticuffs." But by the end of February, Watters had withdrawn as Chen's counsel of record.[7]

---

[7] Again, the record does not include a notice of withdrawal or substitution, and Watters includes no additional evidence concerning the restraining order request. However, Liu's request for judicial notice includes a family court minute order from July 7, 2023, *after* the hearing on the anti-SLAPP motion and while this appeal was pending that indicates Chen's TRO expired and no further restraining order issued: "Court denies Respondent's Request to set aside the TRO. Petitioner's Temporary Restraining Order expires as of today and she is neither present in Court nor by Zoom to pursue. All temp orders are dissolved. Case dismissed for lack of prosecution."

## II. Watters Files Suit Against Liu

Beginning in March and continuing through at least August 2022, Liu, using fictitious names, posted a series of negative reviews on Watters's professional Yelp page. Liu's "posts" identified Watters by name, referenced cases he litigated, and portrayed him in a negative light.

For example, Liu posted, "Andrew Watters has been complained to the California State Bar twice now for misconduct" and attached two images of what appear to be excerpts from State Bar complaints concerning perjury, false representations, and threats. In another post, Liu published what appears to be an excerpt from a federal court order in which the court expressed "concerns" about Watters's representation of the plaintiff in that case.

Suspecting Liu authored the posts (which Liu later acknowledged), Watters responded with his own public Yelp post: "This guy is the defendant in a case I am handling, was never a client of my firm, and is harassing me with a campaign of defamatory, fake reviews. He is a lawyer named Zheng Liu, who is absolutely nuts but who should know better. This fake review was reported to Yelp and should be removed in the near future." Watters apparently added Liu to a "Hall of Shame" he maintains on his website "for the sole sake of smearing his opponents."

Watters also applied for a civil harassment restraining order against Liu that was denied pending hearing. In the application, Watters described Liu as "an erratic, unpredictable individual of unsound mind."[8] Watters

---

[8] The record does not indicate if the restraining order hearing scheduled for September 15 took place or its outcome, but a November 28 minute order states that, on that date, no parties appeared, no proof of service was on file, and it was the "last continuance," thus the court dismissed the action for "lack of prosecution."

4

additionally reported Liu to the State Bar, but no formal findings or discipline resulted.[9]

Finally, on October 4, Watters filed an unlimited civil complaint against Liu alleging four causes of action: (1) libel; (2) libel per se; (3) false light; and (4) "tortious interference with business practices." Watters pled that he has "an excellent reputation in the community and his Yelp page is full of satisfied clients." Watters further alleged that after Chen's TRO was extended in mid-February, Liu maliciously posted on Yelp a series of false and misleading assertions with the intention of harming Watters's "excellent reputation" in the community.

### III. Liu's Anti-SLAPP Motion to Strike

In response, Liu filed a special motion to strike pursuant to Code of Civil Procedure section 425.16 (anti-SLAPP motion). The motion argued that publishing court records involving Watters was protected by the First Amendment because Watters was a public figure by virtue of his run for public office.[10] According to Liu, information about "a political candidate's qualification[s] or lack thereof," which contrasted a candidate's campaign slogans, constituted protective activity under the anti-SLAPP statute.

Watters opposed the motion asserting in part that the anti-SLAPP statute was inapplicable because "[a]ttorney services are necessarily covered" instead by section 425.17, subdivision (c) (425.17(c)), which provides that section 425.16 "does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services,"

---

[9] Again, the content of Watters's State Bar complaint and the result of the related investigation, if any, is not part of the record.

[10] Watters acknowledges he ran as a candidate for United States Congress in 2021 and 2022 but withdrew in early 2022; his name, however, remained on the ballot.

such as "insurance, securities, or financial instruments." (§ 425.17) Even though attorney services are not enumerated within section 425.17, Watters reasoned that because "attorneys are in the business of selling their services to the public," and because they represented opposing sides in Chen's TRO matter, he and Liu were necessarily "business competitors." Watters also argued that he was never a public figure for two reasons: (1) he dropped out of the United States congressional race prior to the June 2022 primary election; and (2) he is "simply a local attorney with a Yelp business page[] that he verified in order to be found on Yelp."

Following a hearing, the trial court issued a written order partially granting and partially denying Liu's special motion. In partially granting the motion, the court struck in its entirety the fourth cause of action for "tortious interference with business practices" because Watters failed to "discuss or identify the elements" of his fourth claim or "explain[] why/how he is likely to prevail on th[at] claim." After deciding that the remaining causes of action appeared to be " 'mixed,' " the court purported to excise certain allegations from the complaint after finding that Watters failed to show the statements were demonstrably false and therefore failed to show minimal merit to his claims. The court, however, denied the motion with respect to four allegations which the court found Watters had adequately shown to be true. This appeal by Watters and cross-appeal by Liu followed.

## DISCUSSION

Watters and Liu each respectively assert the anti-SLAPP motion should have been denied or granted in full. We disagree.

### I. Applicable Law

The anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right

6

of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

"The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) "Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' " (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

"A defendant can meet the burden of making a threshold showing that a cause of action is one arising from protected activity by demonstrating the act underlying the plaintiff's cause of action falls within one of the four categories identified in section 425.16, subdivision (e)." (*Cabrera v. Alam* (2011) 197 Cal.App.4th 1077, 1086.)[11] Relevant here is the fourth category,

---

[11] The four categories include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement

7

which serves as a catch-all provision and classifies protected activity as "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) The inquiry under this catch-all provision also entails a two-step process. (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1249–1250 (*Geiser*), quoting *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149–150 (*FilmOn.com*).) Courts first " 'ask what "public issue or [ ] issue of public interest" ' is implicated by the challenged activity. [Citation.] Second, we look to the 'functional relationship' between the challenged activity and the 'public conversation' about that issue, and ask whether the activity ' "contribute[s]" ' to the public discussion of the issue." (*Geiser*, at pp. 1249–1250.)

We review de novo a trial court's ruling granting or denying an anti-SLAPP motion. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

## II. Watters's Appeal

Watters's arguments on appeal are difficult to discern. He posits a single overarching question, "Did the trial court err in partially granting Respondent's Special Motion to Strike when Appellant was a private figure and the defamatory statements, and republication of them, were not matters of public concern?" Watters then asserts prejudicial error in the court's

___

or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

failure to "completely deny" Liu's motion, claiming, "the trial court err[ed] in applying the anti SLAPP statute to a private figure and not matters of public concern, and abusing its discretion by striking a factually supported cause of action as well as relevant facts, to the detriment of Appellant." Yet Watters's opening and responding briefs are a meandering compilation of complaints about Liu and the trial court without appropriate citation to the record or legal authority that might support his contentions. As such, Watters's appeal fails. (See, e.g., Cal. Rules of Court, [12] rule 8.204(a); *People v. Stanley* (1995) 10 Cal.4th 764, 793; *Young v. California Fish and Game Commission* (2018) 24 Cal.App.5th 1178, 1190–1191.)

## A. Watters' Failure To Appropriately Cite Factual Support Is Fatal to His Claims.

Rule 8.204(a)(1)(C) requires any referenced matter in the record to be supported "by a citation to the volume and page number of the record where the matter appears." "Each and every statement in a brief regarding matters that are in the record on appeal, whether factual or procedural, must be supported by a citation to the record. This rule applies regardless of where the reference occurs in the brief." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 96, fn. 2.) When a litigant repeatedly provides no citations to the record, the rule violation is "egregious" (*Evans v. CenterStone Development Co.* (2005) 134 Cal.App.4th 151, 166–167), and the appellate court has the discretion to disregard the litigant's unsupported assertions. (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768; *Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1037.) "It is not the task of the reviewing court to search the record for evidence that supports the party's statement; it is for the party to cite the court to those references. Upon the party's failure to do

_____

[12] Further rule citations are to the California Rules of Court.

9

so, the appellate court need not consider or may disregard the matter." (*Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 826, fn. 1.)

Watters's failure to provide adequate citations to the record is egregious. His opening brief starts with a section titled, "Facts Giving Rise To Appellant's Lawsuit," yet no specific citations are included to support these purported facts. Instead, Watters repeatedly cites the appendix on appeal in bulk: "AA 122-246." The next section, titled, "Facts Regarding Trial Court's Errors and Abuse of Discretion" contains no citations to the record at all. The entire argument section that follows spans 18 pages but includes only one citation to the record, and it is the same 124-page bulk citation: "AA 122-246." Watters repeats this error in his reply brief, which again includes one single reference to the citation: "Appellant's Appendix 121-247." He adds only two additional citations in his reply, and both are in response to Liu's cross-appeal: the restraining order included at "Respondent's Appendix 253" and the trial court ruling at "AA 265."

Moreover, as the record includes either a reporter's transcript or a settled statement, whatever showing Watters purports to have made at the hearing is outside the appellate record, and "[w]e must . . . presume that what occurred at that hearing supports the judgment." (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1201; *In re Estate of Fain* (1999) 75 Cal.App.4th 973, 992.) Accordingly, Watters's forfeited claims fail. (See, e.g., *Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 597 [" 'Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record' "].)

## B. Watters's Ongoing Failure To Comply with the Rules and Cite Legal Authority Further Forfeited His Claims.

An appellant bears the burden of affirmatively demonstrating error "and also 'prejudice arising from' that error. [Citation.]" (*Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1006 [calling such framework "[t]he most fundamental principle of appellate review"].) It is not enough to simply tell us an error occurred. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) An appellant " 'must supply [us] with some cogent argument,' " and the argument must be " 'supported by legal analysis and citation to the record.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146.)

An appellate brief must also "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority . . . ." (Rule 8.204(a)(1)(B).) Failure to provide proper headings " 'forfeits issues that may be discussed in the brief but are not clearly identified by a heading.' " (*Tsakopoulos Investments, LLC v. County of Sacramento* (2023) 95 Cal.App.5th 280, 310.) By failing to adequately cite legal authority or evidence in the record and by failing to include accurate headings or subheadings for each point asserted, Watters has forfeited his claims on appeal.

To start, Watters does include headings within his briefs, but they are confusing, repetitive, and bear little connection to his articulated basis for appeal, which asserts error based on Watters's purported private figure status and his theory that Liu's Yelp posts did not address matters of public concern. For example, part "B" of appellant's opening brief is broadly titled, "The Trial Court Erred and Abused Its Discretion by Granting in Part Respondent's Special Motion to Strike." Watters then argues—without citation to the record or relevant legal authority—the court erred in

11

purportedly determining, (1) Watters was a "limited purpose public figure" because Watters was a private figure at the time of Liu's postings, and (2) the postings "were not of public concern." Apparently confusing repetition with persuasion, Watters then repeats these same arguments in differently titled parts C, D, and H, yet still without citation to legal authority.[13]

The arguments presented are also inconsistent with the limited facts that Watters, himself, concedes. For example, Watters does not dispute that he ran for a congressional seat in the House of Representatives or that political candidates are public figures who, in order to prevail in a suit for libel, must demonstrate a defendant bore actual malice in publishing the statements at issue. (See, e.g., *Collins v. Waters* (2023) 92 Cal.App.5th 70, 79 [deeming candidate for congressional office to be a public figure].) Instead, Watters claims that his withdrawal from the congressional election means he could not still be considered a public figure at the time of Liu's Yelp posts. But Watters did not present evidence before the trial court or on appeal specifying the date of his "undisputed" withdrawal,[14] nor did he cite legal authority that such a withdrawal would immediately nullify his public figure status.

---

[13] Part C is titled, "The Trial Court Erred In Finding Appellant To Be A Limited Purpose Public Figure"; part D is "The Court Erred In Striking Appellant's Fourth Cause Of Action"; and part H is "Even If Appellant Was A Limited Purpose Public Figure, Code Civ. Proc., § 425.17(c) Bars Respondent's Anti-SLAPP Motion."

[14] The only evidence referenced by Watters is a single cite to an un-authenticated attachment to Liu's anti-SLAPP motion purporting to be from the Palo Alto Daily Post dated May 23, 2022—which is *after* Liu's initial Yelp posts—that reads, "Redwood City attorney Andrew Watters'[s] name will appear on the ballot, but he has dropped out."

The trial court seems to have accepted Watters's representation that he terminated his candidacy prior to Liu's posts but determined that because Watters's name remained on the ballot through the June 2022 election, he maintained his public figure status through at least that time, which includes Liu's posting period. Watters provides no authority demonstrating the error in this conclusion or why he should be considered a private figure in the context of this litigation. As such, his arguments contesting any public figure or limited public figure findings are forfeited.[15] (*County of Sacramento v. Singh* (2021) 65 Cal.App.5th 858, 861 [we need not develop legal arguments for an appellant and "may treat a point that is not supported by cogent legal argument as forfeited"]; see also *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078.)

Similarly, Watters complains without authority that Liu's Yelp posts did not address matters of public concern because they did not specifically reference his congressional run. Watters acknowledges settled law that provides statements may concern a public issue or a matter of public interest when, (1) the subject of the statement or activity precipitating the claim was a person or entity in the public eye; (2) the statement or activity precipitating

---

[15] By contrast, Liu produced ample evidence before the trial court and on appeal showing that Watters was a person in the public eye. (*Rivero v. American Federation of State, County, and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 919–924 (*Rivero*); accord, *FilmOn.com*, *supra*, 7 Cal.5th at p. 149.) Liu attested to Watters's 2022 run for office—the United States House of Representatives, California 15th Congressional District—at the same time he represented Liu's former girlfriend in the domestic violence matter and included two news articles reporting on Watters's candidacy. Watters's own declaration opposing Liu's anti-SLAPP motion confirmed he ran for Congress from November 2021 through March 2022 and received 1,100 votes in the June 2022 primary, around 1 percent of the total votes cast.

the claim involved conduct that could affect large numbers of people beyond the direct participants; or (3) the statement or activity precipitating the claim involved a topic of widespread public interest. (*Rivero*, *supra*, 105 Cal.App.4th at pp. 919–924, cited with approval in *FilmOn.com*, *supra*, 7 Cal.5th at p. 149.) But he ignores our Supreme Court's determination that, as it concerns a potential federal government representative, "the challenged speech or conduct, considered in light of its context, may reasonably be understood to implicate a public issue, even if it also implicates a private dispute." (*Geiser*, *supra*, 13 Cal.5th at pp. 1253–1254.)

Watters instead complains that because Liu did not "make any connection that would lead a reasonable person to conclude [Liu] was commenting on fitness for office," the posts were not of public interest, "[e]ven assuming arguendo that [Watters] was a limited purpose public figure." This theory also ignores the court's reasoning that, regardless of Watters's congressional run, his status *as an attorney* means, "commentary about his character and/or ability as an attorney would have been of interest to the public." (See, e.g., *Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, 888 [online reviewer claiming law firm was " 'underhanded and shady,' . . . 'unprofessional and unethical,' used 'scare tactics,' and had an 'awful moral compass,' " among other things, was protected activity].) Because Watters fails to address these legal authorities supporting the court's ruling, his contrary argument now is forfeited. (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.*, *supra*, 100 Cal.App.4th at p. 1078 ["Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review"].)

In addition to Watters's failure to adequately cite legal or factual authority in support of his arguments or to show error in the trial court's findings, he also fails to address other rulings by the court fatal to his appeal. For example, Watters does not appear to contest the trial court's findings that Liu's Yelp postings constituted protected activity under section 425.16, subdivisions (e)(1) and (e)(2) because they referenced State Bar complaints, or that the Yelp posts were protected under subdivision (e)(3) because they implicated Liu's free speech rights and were made in a public forum. Without citation or argument to the contrary, these findings of the trial court appear to be unchallenged, and we need not reconsider them.

Watters includes a smattering of additional arguments in his brief that fail for similar reasons. For example, he asserts that Liu's Yelp posts are exempt from anti-SLAPP protection because they constitute "commercial speech." (§ 425.17(c); *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 25.) Watters does not contest the trial court's determination the commercial speech exemption does not apply because "it does not appear, *nor does Watters argue*, that Liu made any of the Yelp postings for the purpose of promoting his own law practice or his own legal services, nor were the postings made in the course of" Liu's provision of legal services. (Italics added.) Instead, Watters contends for the first time on appeal that he provided sufficient evidence to show Liu's Yelp reviews were made in the course of Liu's delivery of goods or services.

In making this argument, Watters ignores his own representation that he was not counsel for Chen at the time of Liu's Yelp posts and cites no legal authority to support his contention that attorney services are "necessarily covered" as commercial services under section 425.17(c). " ' "When an appellant fails to raise a point, or asserts it but fails to support it with

15

reasoned argument and citations to authority, we treat the point as waived." ' " (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956; see also *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)  Thus again, Watters's failure to cite legal authority results in the forfeiture of his argument.

Watters next contends the trial court erred by striking his fourth cause of action for failure to make a prima facie showing that the claim had "minimal merit." (*Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 291.)  He argues the trial court should have granted leave to amend the complaint on its own motion or should have construed the fourth cause of action as a different claim for "Unfair Business Practices."  First, a court cannot grant leave to amend when it rules on an anti-SLAPP motion. (*Dickinson v. Cosby* (2017) 17 Cal.App.5th 655, 676–677 [discussing cases that recognize courts cannot grant anti-SLAPP motions with leave to amend].)  Second, Watters did not raise either of these arguments before the trial court, and his appellate briefs fail to cite any relevant authority to support his alternative argument; the arguments are therefore forfeited. (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 [" 'issues not raised in the trial court cannot be raised for the first time on appeal' "]; *Howitson v. Evans Hotels, LLC* (2022) 81 Cal.App.5th 475, 489 ["It is well settled that the failure to raise an issue in the trial court typically forfeits on appeal any claim of error based on that issue"]; *Wisner v. Dignity Health* (2022) 85 Cal.App.5th 35, 44–45 [declining to consider plaintiff's anti-SLAPP arguments not raised in the trial court].)

Last, Watters asserts the trial court generally erred in striking various allegations from his complaint because "each of the stricken allegations also support each of [Watters's] four causes of action."  He also claims that the

stricken allegations could be susceptible of both an innocent and a libelous explanation, meaning "a jury must decide how they are understood."[16] We reject these arguments for the reasons discussed above, as Watters has failed to demonstrate the court erred in determining what constituted protected activity and Watters's public figure status. (See *Bonni v. St. Joseph Health System*, *supra*, 11 Cal.5th at p. 1019 [That some allegations are stricken from the pleadings "does not mean the underlying factual allegations may not be mentioned in the course of any ensuing proceedings"].)

Moreover, the purpose of an anti-SLAPP motion is to obviate the need for a jury trial for those claims that lack minimal merit. (*Klem v. Access Ins. Co.* (2017) 17 Cal.App.5th 595, 608; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 63 ["section 425.16 . . . subjects to potential dismissal only those causes of action as to which the plaintiff is unable to show a probability of prevailing on the merits"]; *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 866–868.) Thus, we are not persuaded by Watters's circular reasoning that it should be up to the jury to decide whether certain claims are so meritless that no jury trial is warranted. To hold otherwise would defeat the very purpose of the anti-SLAPP statute.

Due to Watters's "egregious" and persistent failure to follow the Rules of Court, cite to the evidentiary record, and provide relevant legal authority, he has forfeited his claims on appeal. (See *Bishop v. The Bishop's*

---

[16] Watters further asserts error "because the stricken allegations imply that [Liu] has knowledge of undisclosed facts." But we do not understand, and Watters fails to explain, how any implied knowledge by Liu aids Watters's probability of prevailing on any of his claims. Because this argument is confusing and unclear, we disregard it. (*County of Sacramento v. Singh*, *supra*, 65 Cal.App.5th at p. 861.)

17

*School* (2022) 86 Cal.App.5th 893, 910, citing *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*, *supra*, 37 Cal.App.4th at p. 869 [when an appellant fails to "convince us, by developing his arguments, stating the law, and calling out relevant portions of the record, that the trial court committed reversible error. [Citation.] His failure to do so justifies rejection of his argument on this basis alone"].) We therefore affirm the trial court's order striking certain allegations of the complaint and turn to Liu's cross-appeal.

### III. Liu's Cross-Appeal

In his cross-appeal, Liu challenges the trial court's refusal to strike allegations related to four Yelp postings the trial court identified as "potentially actionable." They include Liu's posts concerning a February 16 complaint about Watters to the California State Bar and three additional posts we discuss below. We find no error in the court's rulings.

### A. The February 16 State Bar Complaint

The first postings the trial court found to be potentially actionable were Liu's March 2022 Yelp posts purporting to show an excerpt from a February 16 complaint made about Watters to the California State Bar. The post stated in part: "[A]fter [Watters's] client obtained an ex parte Temporary Restraining Order (TRO) against [Liu] (based on perjured statements of battery), Attorney Watters falsely represented to [Liu] that the TRO prohibits [Liu] from ever contacting his client. Attorney Watters then threatened to report [Liu] to the police and the [S]tate [B]ar for violation of this provision of the TRO. But, after [Liu] obtained a copy of the actual court order from the Court, the TRO never prohibited [Liu] from contacting [Watters's] client and in fact allows for peaceful contact [*sic*]. Attorney Watters thus violated Rule 4.1 (Truthfulness in Statements to Others) because he make [*sic*] a false statement of material fact to Complainant."

18

The trial court concluded that these posts were actionable because Liu's comment that "the TRO never prohibited [Liu] from contacting his client and in fact allows for peaceful contact" appears "demonstrably false." As the court noted, the TRO expressly prohibited Liu from contacting his ex-girlfriend by any means including e-mail communications. Even so, Liu acknowledged under penalty of perjury that he continued to contact Chen to "beg[i]n negotiating a global settlement amongst themselves . . . ." Liu's post accusing Watters of unethically misrepresenting or lying about the terms of the TRO when the TRO did in fact include a no contact provision supports the trial court's determination that Watters demonstrated a related "probability of success on the merits" of this claim.

Liu nonetheless argues that the trial court erred for "at least" two reasons. First, he maintains that disciplinary complaints to the State Bar are absolutely privileged under Business and Professions Code section 6094,[17] meaning they cannot serve as a basis for a lawsuit unless Watters can show that Liu's actions in filing a State Bar complaint were "illegal as a matter of law." Second, Liu argues he had "a strong basis" to believe that the TRO was inapplicable to him. These arguments are meritless.

Liu's first contention overlooks the bases of the complaint are the allegedly false or libelous yelp posts, not whether or not Liu made a State Bar complaint. Further, Liu mistakenly assumes that Watters must show that the alleged State Bar complaint was *un*privileged or is illegal as a matter of law. But it is the party claiming a statutory privilege during anti-SLAPP

---

[17] Business and Professions Code section 6094, subdivision (a) provides, in part, "Communications to the State Bar relating to lawyer misconduct or disability or competence, or any communication related to an investigation or proceeding and testimony given in the proceeding are privileged, and no lawsuit predicated thereon may be instituted against any person."

litigation who bears the burden of proving up that privilege. (See *Neurelis, Inc. v. Aquestive Therapeutics, Inc.* (2021) 71 Cal.App.5th 769, 794 [defendant bears the burden of proving that communications are absolutely privileged under Civil Code section 47, subdivision (b) during second prong of an anti-SLAPP motion].) Liu has not presented evidence to the trial court or on appeal that he did in fact make a complaint to the California State Bar; the images attached to Liu's Yelp posts are unauthenticated and bear no self-identifying marks. As such, there was no evidence before the trial court nor is there any before us that a State Bar complaint exists deserving of a privilege protection.[18]

Liu's second argument is even less convincing. According to Liu, the trial court erred because he had "a strong basis to believe the TRO was inapplicable to him," meaning Watters failed to show that the purported complaint posted to Yelp was demonstrably false. We are not persuaded. The TRO only applied to Liu and, as the trial court found, expressly prohibited Liu from having any contact with Chen except through a lawyer, process server, or another person for purposes of legal process. Moreover, the unrefuted record shows that Chen requested, and the trial court granted, a no-contact provision as part of the original TRO. Thus, Liu's assertion that he had a "strong basis to believe" that the TRO did not apply to him—because Chen never requested that provision or because he was serving as his own attorney—is disingenuous at best.

## B. The Three Additional Allegations

Liu's remaining contentions challenge the trial court's refusal to strike three additional allegations it found supported Watters's prima facie claims:

---

[18] Liu also alleges that Watters reported him to the State Bar but fails to explain the relevance of that allegation.

(1) Liu's claim that "Watters was dishonest and sanctioned for more than $404,387" by a Sonoma County Superior Court judge; (2) Liu's "remark(s) that Watters was involved in 'serious criminal activities' and then 'fired by the FBI' "; and (3) a June 30 Yelp post depicting an excerpt from a federal court order in an unrelated case, which Liu annotated with the following statement: "Andrew Watters suing own client per federal judge is a problem."

The trial court's refusal to strike the first two statements is not grounds for reversal because the challenged claims were not in fact alleged in Watters's complaint. "[T]he pleading itself provides the outer boundaries of the issues that are to be addressed in an anti-SLAPP motion. [Citation.] Because '[t]he general rule is that the words constituting an alleged libel *must be specifically identified, if not pleaded verbatim,* in the complaint' [citation], a court need not consider assertions of defamatory statements that are not alleged in the complaint' [citation]." (*Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 893.) Thus, we need not consider these statements or Liu's related contentions of error because the two allegations targeted by Liu "were never stated in the complaint," nor did Watters "add[] these allegations in his opposition" to Liu's special motion to strike or otherwise attempt to amend his pleading as Liu maintains. Rather, Liu himself first made these assertions in his anti-SLAPP motion and supporting declaration. Since these allegations were not in fact alleged in the operative complaint, they cannot be stricken: Liu's related request was futile.

Moreover, the trial court's decision to address and rule on non-existent allegations does not require reversal. We review the result the trial court reached, not its legal reasoning, and we may affirm on any ground supported

21

by the record, unconstrained by the route the trial court took in getting there. (*The Pep Boys Manny Moe & Jack of California v. Old Republic Insurance Company* (2023) 98 Cal.App.5th 329, 334–335; *Wentworth v. Regents of University of California* (2024) 105 Cal.App.5th 580, 597 ["The trial court's reasons for its ruling 'are not binding on us because we review its ruling, not its rationale.' [Citation.] We 'must affirm on any ground supported by the record' "].) Since the specific allegations Liu challenges were not alleged, the trial court properly denied Liu's request to have them stricken.

Finally, we reject Liu's challenge to the third statement concerning the federal court order, which was alleged in the complaint. The trial court found Liu's comment to be "somewhat misleading" since the federal court never reached a conclusion as to whether Watters had violated California's Rules of Professional Conduct. We agree with the trial court. Liu's modification lacks any context yet misleadingly suggests that a federal judge found Watters in violation of California's ethical rules, which is not what the image depicts.

Liu nonetheless argues unpersuasively that the trial court erred because he merely added a "one-liner remark" to the federal court order that was "in accordance with verbatim except from a federal judge [*sic*]" and therefore "true." The issue is not how many lines Liu may have added to the court order, but whether Watters carried his burden of proving the claim had minimal merit. Here, we conclude he did.

Liu also argues, apparently for the first time on appeal, that his "one-liner remark" was an "opinion" and therefore not actionable. Liu does not claim or demonstrate through record citations that he raised this issue in the trial court. Accordingly, we deem the issue forfeited and will not consider it. (*Johnson v. Greenelsh, supra,* 47 Cal.4th at p. 603; *Howitson v. Evans Hotels,*

*LLC*, *supra*, 81 Cal.App.5th at p. 489; *Wisner v. Dignity Health*, *supra*, 85 Cal.App.5th at pp. 44–45.)

Consequently, we affirm the trial court's partial denial of Liu's anti-SLAPP motion.

## DISPOSITION

The order granting in part and denying in part Liu's anti-SLAPP motion is affirmed. The parties are to bear their own costs on appeal.

DESAUTELS, J.

We concur:


STEWART, P.J.


MILLER, J.


*Watters v. Liu* (A168766)